# United States Court of Appeals
## For the First Circuit

No. 14-1926

HELDER BARBOSA,

Petitioner, Appellant,

v.

LISA A. MITCHELL, SUPERINTENDENT,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Lynch, Selya, and Kayatta,
Circuit Judges.

Elizabeth Doherty for appellant.
Christopher Hurld, Assistant Attorney General, with whom
Maura Healey, Attorney General of Massachusetts, was on brief, for
appellee.

January 28, 2016

**KAYATTA**, **Circuit Judge**.  Helder Barbosa was convicted of first degree murder, armed assault with intent to murder, assault and battery with a dangerous weapon, and the unlicensed possession of a firearm.  Commonwealth v. Barbosa, 933 N.E.2d 93, 99 & n.1 (Mass. 2010) ("Barbosa").  The Supreme Judicial Court of Massachusetts ("SJC") affirmed his convictions, id. at 99, and the United States District Court for the District of Massachusetts subsequently denied Barbosa's petition for a writ of habeas corpus, Barbosa v. Gelb, No. 12-10764, 2014 WL 3897652, at *1 (D. Mass. Aug. 6, 2014) ("Gelb").  Claiming that evidence provided by an expert witness who relied on and tendered work done by a non-testifying witness violated his clearly established right to confrontation under the Sixth Amendment to the United States Constitution, Barbosa appealed.  For the reasons explained below, we affirm.

## I.  Background

The law requires us to accept the state court's findings of fact because Barbosa makes no showing that any of those facts are clearly and convincingly in error.  McCambridge v. Hall, 303 F.3d 24, 26 (1st Cir. 2002) (en banc) (citing 28 U.S.C. § 2254(e)(1)).  We therefore begin with a summary of those findings as set forth by the SJC in its opinion.

At approximately 7:00 PM on October 6, 2004, Geraldo Carbuccia and Edward Serret encountered Barbosa as they were

walking in the Roxbury section of Boston.  Barbosa, 933 N.E.2d at 99.  Carbuccia had seen Barbosa only twice before, whereas Serret and Barbosa were better acquainted.  Id.  The three men walked to Robey Street, where Barbosa left Carbuccia and Serret to wait for him in an alleyway.  Id.  Returning five to ten minutes later, Barbosa pulled out a gun and shot Carbuccia in the shoulder from ten to fifteen feet away.  Id.  After falling to the ground, Carbuccia heard three or four more gunshots and then heard Serret say, "Dammit, you're going to kill me."  Id. at 99–100.

Luis Sanches, an eyewitness, testified that he heard three or four shots on Robey Street and then saw Barbosa and Serret running from Robey Street onto Marshfield Street while punching each other.  Id. at 100.  After another gunshot, Serret fell to the ground while Barbosa continued to punch him before Barbosa ran away and turned the corner onto Norfolk Avenue.  Id.

Between 8:00 and 8:30 PM, Police Officers William Hubbard and Charles MacKinnon received a radio call to respond to the scene at Marshfield Street.  Id.  Approximately one minute after receiving the call, they saw Barbosa walking toward them on Burrell Street, which is approximately one block from Marshfield.  Id.  The officers observed that Barbosa was walking at a "brisk pace," and that he "appeared to be short of breath, and [that] his face was glistening with sweat."  Id.  When Hubbard rolled down the car window to ask Barbosa whether he had heard gunshots,

- 3 -

Barbosa pointed to the intersection of Burrell and Bachelder Streets, making excited gestures and stating, "Over there, I heard shots, they are crazy, I had to run." Id. When Hubbard opened his door to exit his vehicle, Barbosa immediately began to run away. Id. Hubbard followed him on foot and ordered Barbosa to stop, but Barbosa did not comply. Id. After a brief chase, Hubbard tackled Barbosa to the ground. Id. When Hubbard ordered Barbosa to show his hands, Barbosa refused, crawling toward the sidewalk. Id. During the ensuing struggle, Hubbard "heard a loud splash" and saw Barbosa's hand emerge from a catch basin. Id. Barbosa then ceased struggling and showed Hubbard his hands, which were empty. Id. Hubbard handcuffed Barbosa and placed him in a police car. Id.

A short while later, the Boston Water and Sewer Commission brought a "clam truck" at Hubbard's request to scoop out the contents of the catch basin. Id. The first scoop produced a nine millimeter Bryco semi-automatic pistol. Id. at 100-01. At trial, a ballistics expert testified that this pistol matched the shell casings and bullet fragments found at the scene of the shooting. Id. at 103.

During an interview with Detective Dennis Harris and Sergeant Detective Thomas O'Leary at the police station, Barbosa claimed he fled from Officer Hubbard because he thought there was an outstanding warrant for his arrest based on a motor vehicle

- 4 -

infraction.  Id. at 101.  A record check revealed no such warrant. Id. at 101 n.2.  Barbosa also denied any involvement in the shooting and denied throwing anything into the catch basin.  Id. at 101.  After Detective Harris informed Barbosa that a firearm had been found in the basin, Barbosa's demeanor changed and he "dropped his head to his knees."  Id.

During interviews on October 11 and October 16, 2004, Carbuccia initially stated that he did not "get a good look" at the shooter.  Id.  On October 18, 2004, Carbuccia changed his tune. He contacted Sergeant Detective Richard Daley and gave a tape-recorded statement that Barbosa had shot him, and he also selected Barbosa's photograph from an array of eight photographs.  Id.  Two years later, in preparation for trial, Carbuccia then further informed the district attorney that he and Serret had witnessed Barbosa shoot another man on September 21, 2004, two weeks before Barbosa shot Carbuccia and Serret.  Id.

Shortly after the shooting, Cheryl Delatore--a DNA analyst no longer employed by Boston police department at the time of trial--performed DNA testing on four samples taken from:  (1) a red stain on Barbosa's left boot; (2) a red stain on Barbosa's left pant leg; (3) a bloodstain from Serret; and (4) an oral swab from Barbosa.  Id. at 103-04.  At trial, Julie Lynch, a senior criminalist in the DNA unit of the Boston police department, explained the process of DNA testing and analysis, id. at 102-04,

and testified that, in her opinion, the results of Delatore's tests indicated that Serret was a "possible source of the DNA extracted from" the bloodstains on Barbosa's boot and pant leg, "while [Barbosa] was excluded as a possible source of the DNA from both," id. at 102.  Without any objection from Barbosa, a table prepared by Delatore was introduced into evidence showing the results of the DNA tests and Lynch orally conveyed some of the table's information to the jury.  Id. at 104.

Lynch admitted on cross-examination that she had not done the tests herself.  Id.  Rather, she had supervised and trained Delatore, reviewed the worksheets and reports Delatore had generated during the testing, and signed Delatore's final report.  Id.  She agreed that because she did not stand "over [Delatore's] shoulders" during the testing, she had "no idea" whether Delatore made any mistakes.  Id. (alteration in original).  The only way to be certain would be to retest all of the samples, which she had not done.  Id.

A Suffolk County jury convicted Barbosa of first-degree murder with premeditation and extreme atrocity or cruelty, armed assault with intent to murder, assault and battery with a dangerous weapon, and the unlicensed possession of a firearm.  Id. at 99 & n.1.  In his appeal to the SJC, Barbosa argued, inter alia, that both Lynch's testimony about the results of DNA testing she did not perform and the introduction into evidence of the table created

- 6 -

by Delatore violated his Sixth Amendment right of confrontation. Id. at 99, 104.

The SJC affirmed Barbosa's convictions, holding that even though Lynch's own opinion was based in part on DNA testing she did not perform, Barbosa's right of confrontation was not violated because "he had a fair opportunity to confront Lynch as to the reasonable basis for [her] opinion[s]." Id. at 107. The SJC also held, however, and the State conceded, that Barbosa's confrontation rights were violated by the admission of Delatore's results table and Lynch's testimony reciting some of the information in the table. Id. Nevertheless, because Barbosa "did not object to the admission of this testimony or otherwise preserve his claim of error," the SJC reviewed the error under the "miscarriage of justice" standard and concluded that in light of Lynch's properly admitted testimony and the "other overwhelming [non-DNA] evidence against the defendant . . . no substantial likelihood of a miscarriage of justice resulted from the improper admission of Delatore's results table, or Lynch's testimony regarding Delatore's results and opinion." Id. at 111. The Supreme Court denied Barbosa's petition for certiorari. Barbosa v. Mitchell, 131 S. Ct. 2441 (2011).

On April 27, 2012, Barbosa filed his petition for a writ of habeas corpus with the United States District Court for the District of Massachusetts based on the admission of Lynch's

testimony and Delatore's results table. Barbosa's petition relies on the Supreme Court's decisions in Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009), and Bullcoming v. New Mexico, 131 S. Ct. 2705 (2011). The district court denied the petition, holding that: admission of Lynch's own expert opinion did not violate clearly established law even though she relied on Delatore's work product in forming her opinion; and (2) the submission of Delatore's results table and Lynch's recitation of portions of the table, although a violation of Barbosa's right of confrontation, did not have a "substantial and injurious effect" on the jury's verdict because it was "cumulative" of Lynch's properly-admitted testimony and because there was other "overwhelming evidence of guilt." Gelb, 2014 WL 3897652, at *3-5. The district court granted a certificate of appealability and Barbosa now appeals to this court.

## II. Discussion

### A. Standard of Review

This court reviews a district court's denial of a petition for writ of habeas corpus de novo. Saint Fort v. Ashcroft, 329 F.3d 191, 202 (1st Cir. 2003). A writ of habeas corpus is available to a "person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The availability of such relief is

subject to several additional requirements, including the requirement that the writ may not issue "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Id. § 2254(d)(1). This is a difficult standard to meet, Greene v. Fisher, 132 S. Ct. 38, 43 (2011), and "only Supreme Court precedent in effect at the time of the state court adjudication on the merits counts as 'clearly established Federal law,'" Nardi v. Pepe, 662 F.3d 107, 110 (1st Cir. 2011) (quoting Greene, 132 S. Ct. at 43). For purposes of this appeal, the relevant date for determining applicable Supreme Court precedent is September 7, 2010, when the SJC affirmed Barbosa's convictions. Gelb, 2014 WL 3897652, at *3.

## B. Confrontation Clause

The Sixth Amendment to the United States Constitution, made applicable to the states via the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; Pointer v. Texas, 380 U.S. 400, 403 (1965). In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause guarantees a defendant's right to confront those who "bear testimony" against him. Id. at

- 9 -

51.  The SJC held, and neither party disputes, that the evidence at issue in this case, including Delatore's results table, was "testimonial."  Barbosa, 933 N.E.2d at 104, 107.

**1.  Admission of Lynch's Expert Opinion Testimony**

We consider first Barbosa's argument that allowing Lynch to offer her own opinion based on the results of Delatore's testimony violated clearly established Sixth Amendment law.  To build this argument, Barbosa points to Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009), as the Supreme Court decision that he says clearly established by 2010 that Lynch should not have been allowed to offer an opinion that relied on the work of another person who did not testify.

Melendez-Diaz did not involve a challenge to a witness's testimony.  Rather, the challenged evidence submitted by the prosecution in that case consisted solely of three "certificates of analysis" showing the results of a forensic analysis performed on seized substances in a drug trafficking case.  Id. at 308.  The analysts who performed the tests did not testify, and the court admitted the certificates into evidence over the defendant's objection, taking them as "prima facie evidence of the composition, quality, and the net weight of the narcotic . . . analyzed."  Id. at 309 (alteration in original) (quoting Mass. Gen. Laws ch. 111, § 13 (2008) (repealed 2012)).

Barbosa nevertheless argues that he need not show that the facts of Melendez-Diaz are on all fours with the facts here. He need only show that Melendez-Diaz clearly established law that, without extension, applied here "beyond doubt." Yarborough v. Alvarado, 541 U.S. 652, 666 (2004). The problem for Barbosa, though, is that it was hardly beyond doubt that Melendez-Diaz's ruling concerning testimonial pieces of paper applied without extension to live testimony by an expert witness who has some connection to the scientific report prepared by another whom she supervised, or who is asked to offer her own opinion about reports that themselves cannot be put into evidence. To the contrary, four U.S. Supreme Court Justices later read Melendez-Diaz as not establishing at all, much less beyond doubt, the proposition that admitting an opinion such as that offered by Lynch violates the right to confrontation. See Williams v. Illinois, 132 S. Ct. 2221, 2228 (2012) (plurality opinion). Indeed, by blessing the admission of almost identical testimony by a DNA expert, the Court's actual holding in Williams might well be read as telling us that Barbosa is not, with respect to this issue, being held "in custody in violation of the Constitution," 28 U.S.C. § 2254(a), much less that the fact of a violation was clearly established in 2010.

In light of the foregoing, we conclude that the admission of Lynch's own expert opinion does not provide a basis for habeas corpus relief.

## 2. Admission of Delatore's Results Table and Lynch's Recitation of Delatore's Findings

We turn, last, to Barbosa's challenge to the admission of Delatore's results table and Lynch's recitation of Delatore's findings. Because Barbosa did not object in the trial court "to the admission of this testimony or otherwise preserve his claim of error," the SJC reviewed the claimed error under Massachusetts' "miscarriage of justice standard." Barbosa, 933 N.E.2d at 111. Usually, such a finding of procedural default would constitute an independent and adequate state law ground for a state court's decision, thereby foreclosing habeas relief unless the petitioner can "demonstrate cause for the default and prejudice stemming therefrom, or, alternatively, unless the petitioner can show that a refusal to consider the merits of the constitutional claim will work a miscarriage of justice." Burks v. Dubois, 55 F.3d 712, 716 (1st Cir. 1995) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)).

The State, though, advances no argument that Barbosa's failure to make a contemporaneous objection to the admission of the results table "constituted an independent state law ground for the SJC's refusal to grant relief." Tart v. Commonwealth of Massachusetts, 949 F.2d 490, 496 (1st Cir. 1991). Rather, the State actually suggests that the SJC ruled on the merits of Barbosa's claim. We will therefore accept the State's invitation

to ignore Barbosa's own default, and consider the merits of his belated challenge to the admission of Delatore's results table and Lynch's recitation of Delatore's findings.[1]

On the merits, the State also does not dispute that admitting Delatore's results table and allowing Lynch to recite for the truth of the matter information from the table violated clearly established law under the Confrontation Clause. The State argues, instead, that the admission of the results table and of Lynch's recitation of information from the table for its truth was harmless because the evidence was "cumulative" and "because the properly admitted evidence against [Barbosa] was overwhelming."

When there is a preserved constitutional error in a conviction challenged on habeas review, we are required to apply the harmless error test adopted in Brecht v. Abrahamson, 507 U.S. 619 (1993). Brecht held that a petitioner is entitled to habeas relief if the constitutional error had a "substantial and injurious

---

[1] The Supreme Court has held that a court of appeals, when reviewing a district court's habeas decision, is not required to raise, sua sponte, the issue of a petitioner's procedural default when "[t]he parties themselves ha[ve] neither raised nor argued the matter." Trest v. Cain, 522 U.S. 87, 89 (1997). This court has specifically held that even when the government has not argued procedural default, we have authority, but not the obligation, to raise the issue sua sponte. Ortiz v. Dubois, 19 F.3d 708, 714–15 (1st Cir. 1994); see also Trest, 522 U.S. at 90 (declining to decide "whether, or just when, a habeas court may consider a procedural default that the State at some point has waived, or failed to raise"). We decline to exercise this authority in this case.

- 13 -

effect or influence in determining the jury's verdict." Id. at 637 (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)); see also Wright v. Marshall, 656 F.3d 102, 108 (1st Cir. 2011). We find no such effect or influence on the verdict in this case.

The results table and the testimony about Delatore's conclusions indicated on that table were probative, and thus potentially harmful, because they pointed to the victim rather than Barbosa as the source of the blood on Barbosa's pant leg and boot. That same incriminating linkage, though, was provided directly by Lynch's own opinion in relying on Delatore's work, and we have now found the admission of that opinion not to have been contrary to clearly established federal law. See supra Part II.B.1.

The evidence before the jury also included an abundance of other evidence indicating Barbosa's guilt, including Carbuccia's identification of Barbosa as the shooter; Sanches's testimony corroborating Carbuccia's identification; Carbuccia's testimony that he and Serret had witnessed Barbosa murder another man approximately two weeks before the shooting; and police testimony regarding Barbosa's behavior when encountered shortly after the shooting, including his flight from the police and-- likely most damning--the fact that he dropped an object in the catch basin from which the gun used in the shooting was later retrieved. Barbosa, 933 N.E.2d at 99-103. Given the force of

- 14 -

this evidence as a whole, we cannot conclude that the largely cumulative evidence pertaining to the results table had a substantial and injurious effect on the verdict.  See Brecht, 507 U.S. at 639.

### III.  Conclusion

For the reasons set forth above, the order of the district court is affirmed.