# United States Court of Appeals
## For the First Circuit

No. 21-1208

BRIAN WATSON,

Petitioner, Appellant,

v.

MICHELLE EDMARK,
Warden of the New Hampshire State Prison for Men,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph N. Laplante, U.S. District Judge]

Before

Barron, Chief Judge,
Lipez and Howard, Circuit Judges.

Mark L. Sisti, Sisti Law Offices, for appellant.
Elizabeth C. Woodcock, Assistant Attorney General, with whom
John M. Formella, Attorney General of New Hampshire, and Anthony
J. Galdieri, Solicitor General of New Hampshire, were on brief,
for appellee.

September 30, 2024

**HOWARD, <u>Circuit Judge</u>.** Contending that his Confrontation Clause rights were violated during his trial in a New Hampshire court, appellant Brian Watson appeals the district court's denial of his 28 U.S.C. § 2254 petition for habeas corpus relief. Watson principally argues that the New Hampshire Supreme Court made unreasonable factual findings when it affirmed the trial court's decision to allow the state to present laboratory evidence through the testimony of a forensic toxicologist who had not himself conducted the relevant tests. We conclude that Watson has not established by clear and convincing evidence that the state court's factual findings were incorrect. We further conclude that, to the extent that Watson argues that the state court's decision was contrary to or involved an unreasonable application of Supreme Court precedent, his appeal on that ground also fails.

## I.

Following his trial in 2017, a jury convicted Watson of felony sale of a controlled drug (fentanyl) with death resulting. The state's evidence at trial included testimony by Dr. Daniel Isenschmid, a forensic toxicologist, who explained that testing conducted by colleagues had revealed a certain level of fentanyl and its metabolites in the victim's blood. Watson appealed his conviction, arguing that the trial court erred by, among other things, allowing Dr. Isenschmid to testify to the results of

toxicology tests that he did not perform.  State v. Watson, 185 A.3d 845, 847 (N.H. 2018).  The New Hampshire Supreme Court affirmed.  Id.

Watson subsequently filed a petition for habeas relief pursuant to 28 U.S.C. § 2254 in federal district court, asserting that Dr. Isenschmid's testimony violated Watson's rights under the Confrontation Clause.  The respondent warden of the correctional facility where Watson is in custody moved for summary judgment.  After a hearing, the district court granted the motion for summary judgment.  This appeal followed.[1]

Dr. Isenschmid's testimony and the state court's findings about it bear particular relevance to Watson's plaint, so we examine them at the outset.  Dr. Isenschmid is a forensic toxicologist for National Medical Services ("NMS"), a private laboratory based in Pennsylvania that New Hampshire engages for toxicology screening in connection with forensic autopsies.  As part of the autopsy of the overdose victim in Watson's criminal case, the office of the state's chief medical examiner sent the victim's blood and urine samples to NMS for an "expanded post-mortem toxicology panel."

---

[1] Although Watson's appeal was not timely, the district court granted his unopposed motion for leave to file a late notice of appeal.

At trial, Dr. Isenschmid gave a general overview of the process that NMS uses for samples that arrive from out of state. He testified that, beginning upon arrival, the specimens are tracked throughout the testing process to record the chain of custody. Typically, the testing process involves preparing the samples for analysis, an initial review of the results, and a secondary review of the results. After the laboratory testing is complete, a toxicologist -- such as Dr. Isenschmid -- "review[s] the entire case." Dr. Isenschmid testified that when he reviews a case, he "look[s] at all the documentation[,] . . . make[s] sure everything [was] entered properly into the computer system[,] . . . [and] review[s] all of the instrument tracings" to ensure that it matches what was reported.

With respect to the sample taken from the victim, Dr. Isenschmid testified that the toxicology tests identified three compounds in the victim's blood -- a breakdown of marijuana, fentanyl, and norfentanyl (a breakdown product of fentanyl) -- and that the victim's urine tested positive for marijuana and opiates. He further testified that there were 21 nanograms per milliliter of fentanyl found in the victim's blood and explained that "since the fentanyl concentration was so high [and] the norfentanyl concentration was so low, it could certainly be a reason for an acute fentanyl death," but noted that this conclusion was "something that is determined by the medical examiner."

In considering the permissibility of Dr. Isenschmid's testimony, the New Hampshire Supreme Court noted that Dr. Isenschmid had personally reviewed "all the documentation in the case," ensured that entries had been made correctly, "reviewed the actual instrument data" and "all . . . the testing results," and "issued and signed the toxicology report that described the testing results and testified that the report accurately reflected his findings and conclusions." Watson, 185 A.3d at 858 (internal quotation marks omitted). For these reasons, the state court concluded that Dr. Isenschmid's "participation in preparing the report and developing the substantive conclusions contained therein was real and direct" and that his testimony did not violate the Confrontation Clause. Id. (quoting State v. Michaels, 95 A.3d 648, 674 (N.J. 2014)).

In its order granting summary judgment to the warden in the present habeas action, the district court stated that it could not say that the state court's opinion was "contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court." And the district court noted:

> The case did not involve unaccompanied testimonial affidavits, certifications, or reports, and did not involve "mere custodian" or "mere conduit" testimony from an analyst or criminologist unconnected with the report

(which here was signed by the witness in question) or the work described.

## II.

We review the district court's grant of summary judgment de novo. Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 21 (1st Cir. 2018) (citing McKenney v. Mangino, 873 F.3d 75, 80 (1st Cir. 2017)). "Summary judgment is warranted if the record, construed in the light most flattering to the nonmovant, 'presents no genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law.'" Id. at 20-21 (quoting McKenney, 873 F.3d at 80).

At the same time, "the Antiterrorism and Effective Death Penalty Act ('AEDPA'), which governs petitions for writs of habeas corpus," Kellogg-Roe v. Gerry, 19 F. 4th 21, 25 (1st Cir. 2021), "sets out a separate and exacting standard applicable to review of a state court's factual findings," Yeboah-Sefah v. Ficco, 556 F.3d 53, 66 (1st Cir. 2009) (quoting Pike v. Guarino, 492 F.3d 61, 68 (1st Cir. 2007)). "The state court's factual findings are 'presumed to be correct' unless the petitioner rebuts this 'presumption of correctness' with 'clear and convincing evidence.'" Id. (quoting 28 U.S.C. § 2254(e)(1)).[2]

---

[2] There is "some tension" between AEDPA's provisions: under § 2254(d)(2), "a federal court may issue the writ if the state court decision 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court

- 6 -

AEDPA further mandates that

> where a federal claim was "adjudicated on the merits in State court proceedings," the application for habeas corpus must be denied unless the state court's adjudication of the claim satisfies either of two conditions: (1) it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States," or (2) it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Yeboah-Sefah, 556 F.3d at 65 (quoting 28 U.S.C. § 2254(d)).

**A.**

As noted earlier, Watson's petition principally rests on the ground that the New Hampshire Supreme Court made an unreasonable determination of the facts. On appeal, Watson contends that "Dr. Isenschmid's involvement [in the testing process] presents genuine issues of fact that must be adjudicated," and therefore "the District Court erred in granting of summary

---

proceeding,'" while § 2254(e)(1) asserts that "'a determination of a factual issue made by a State court shall be presumed to be correct' unless rebutted 'by clear and convincing evidence.'" Porter v. Coyne-Fague, 35 F.4th 68, 79 (1st Cir. 2022) (quoting 28 U.S.C. §§ 2254(d)(2), (e)(1)). The Supreme Court has declined to resolve the question of how to harmonize these provisions, as have we. Id. Still, "this circuit has routinely held petitioners to the § 2254(e)(1) 'clear and convincing' standard." Id. (quoting Smith v. Dickhaut, 836 F.3d 97, 101 (1st Cir. 2016)). Here, both parties have applied this standard, and we have followed their lead. In any event, we find that the state court's factfinding survives either standard.

judgment for the Respondent."[3]   In support of this contention,
Watson points to portions of Dr. Isenschmid's testimony where he
explained that he did not participate in the laboratory work nor
supervise those who did.[4]   Dr. Isenschmid also testified that he

[3] Watson trains his appellate argument on the state court's
characterization of Dr. Isenschmid's participation in producing
the laboratory report as "real and direct." See State v. Watson,
185 A.3d 845, 858 (N.H. 2018) (quoting State v. Michaels, 95 A.3d
648, 674 (N.H. 2014)).   Indeed, when pressed at oral argument to
pinpoint the precise factual finding that he was challenging,
counsel for Watson identified the "real and direct"
characterization, as he did in his briefing.  We, however, ascribe
no independent factual or legal significance to the
characterization "real and direct," and instead review the
reasonableness of the state court's relevant factual findings.

[4] In addition to challenging the "real and direct"
description, Watson appears to specifically challenge the New
Hampshire Supreme Court's finding that Dr. Isenschmid "personally
reviewed the 'actual instrument data' and made sure that the data
were accurately entered into the NMS computer," Watson, 185 A.3d
at 858, because Dr. Isenschmid did not testify that he personally
reviewed the data in Watson's case.  But it was not unreasonable
for the New Hampshire Supreme Court to determine that Dr.
Isenschmid conducted such a review, based on the evidence in the
record.  For instance, when asked about his review practices "in
a case like this," Dr. Isenschmid testified that he "review[s] all
the instrument tracings to make sure that what was reported was in
fact what we have in those tracings."
Watson has also failed to point to evidence in the record
that would show that Dr. Isenschmid did not take those steps.
While he highlighted Dr. Isenschmid's explanation that a first and
second reviewer double-check the machine calibration and data
entry, respectively, he does not argue that those reviewers'
actions would have precluded Dr. Isenschmid from conducting
similar actions in his own subsequent review.  Furthermore, while
Dr. Isenschmid did acknowledge that he "did not do any of the
laboratory work" or supervise laboratory workers, those statements
appear to concern the operating of the instruments, as opposed to
the review of the data those instruments produced that the state
court concluded he conducted.

did not know if any of the individuals who had handled the sample had disciplinary records.

But as the New Hampshire Supreme Court noted -- and as it could reasonably infer from Dr. Isenschmid's testimony -- he "reviewed 'all the documentation' in the case, including the chain of custody, and ensured that all of the information had been correctly entered into the NMS computer system"; "personally reviewed the 'actual instrument data' and made sure that the data were accurately entered into the NMS computer"; "actually reviewed all of the testing results"; and "issued and signed the toxicology report that described the testing results and testified that the report accurately reflected his findings and conclusions." Watson, 185 A.3d at 858. Only after considering all of this testimony establishing Dr. Isenschmid's personal review of chain of custody documentation, and his personal review of the data entered, instrument data and test results, as well as the fact that he personally issued and signed the resultant report of his findings, did the New Hampshire Supreme Court conclude that Dr. Isenschmid's participation "was real and direct." Id. (quoting Michaels, 95 A.3d at 674). Regardless of the state court's characterization of Dr. Isenschmid's participation, Watson has not shown "by clear and convincing evidence" any error in that court's recitation of the facts. 28 U.S.C. § 2254(e)(1).

**B.**

Insofar as Watson makes a legal argument that the state-court decision "was contrary to" or "involved an unreasonable application of" Supreme Court precedent, 28 U.S.C. § 2254(d)(1), this challenge also falls short. Under AEDPA, an application of Supreme Court precedent is unreasonable "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." White v. Woodall, 572 U.S. 415, 427 (2014) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)). A state-court decision is contrary to Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Porter v. Coyne-Fague, 35 F.4th 68, 74 (1st Cir. 2022) (alteration in original) (quoting Williams v. Taylor, 529 U.S. 362, 412-13 (2000)).

Watson cannot clear any of AEDPA's hurdles. The Sixth Amendment requires that a laboratory report be introduced through a live witness who either certified the test report by signature or performed or observed the test. Bullcoming v. New Mexico, 564 U.S. 647, 654 (2011). "[I]t is not the case[] that anyone whose testimony may be relevant in establishing the chain of custody,

authenticity of the sample, or accuracy of the testing device[] must appear in person . . . ." Melendez-Diaz v. Massachusetts, 557 U.S. 305, 311 n.1 (2009). But "[t]he Sixth Amendment [is] not satisfied by [the testimony of] a 'surrogate' witness . . . who ha[s] formed no independent opinion concerning the forensic examination results." United States v. Soto, 720 F.3d 51, 58 (1st Cir. 2013) (quoting Bullcoming, 564 U.S. at 661). "Accordingly, the analysts who write reports that the prosecution introduces must be made available for confrontation." Id. (quoting Bullcoming, 564 U.S. at 661).

Watson fails to establish that Dr. Isenschmid was an incompetent witness to introduce his laboratory report for at least three reasons. First, Dr. Isenschmid "signed the report describing [the laboratory test] results." Watson, 185 A.3d at 857; see Bullcoming, 564 U.S. at 663 ("[The] analyst who must testify is the person who signed the certificate . . . ." (quoting Melendez-Diaz, 557 U.S. at 334 (Kennedy, J., dissenting))). Second, Dr. Isenschmid himself authored the laboratory report, which was full of his own analysis and conclusions based upon data from the test results.[5] See Watson, 185 A.3d at 858 ("Isenschmid

---

[5] The basis for Dr. Isenschmid's conclusions distinguishes this case from Smith v. Arizona, 144 S. Ct. 1785 (2024). In Smith, the Supreme Court stated that, "[w]hen an expert conveys an absent analyst's statements in support of his opinion, and the statements provide that support only if true, then the statements come into

personally reviewed the 'actual instrument data' and made sure that the data were accurately entered into the NMS computer. . . . '[T]he findings and conclusions contained in the report and to which he testified were his own.'" (quoting Michaels, 95 A.3d at 674-75)).  Third, as documented by the state court, numerous federal and state courts "have found no Confrontation Clause violation under similar circumstances." Watson, 185 A.3d 845 at 859; see id. at 859 n.3 (collecting cases).  Despite the existence of contrary authority, see id. at 859 n.2 (collecting cases), these rulings establish at the least that there is ample room for fairminded disagreement in this area of law. Cf. Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("[T]he more general the rule, the more leeway courts have in reaching outcomes in case by case determinations."); Williams v. Illinois, 567 U.S. 50, 141 (2012) (Kagan, J., dissenting), abrogated by Smith v. Arizona, 144 S. Ct. 1785 (2024) (highlighting "significant confusion" in this area of law).  Because Watson has failed to

_____

evidence for their truth." Id. at 1791; see id. at 1796 ("Longoni prepared for trial by reviewing Rast's report and notes.  And when Longoni took the stand, he referred to [Rast's] materials and related what was in them, item by item by item.").  Thus, if the statements are also testimonial, the Confrontation Clause bars their admission. Id.  Here, Dr. Isenschmid's report was based on "'all the documentation' in the case," including "actual instrument data" and "all of the testing results." Watson, 185 A.3d at 858; see supra note 4.  We have no way to determine, and Watson does not address, whether these data and test results comprise statements of an absent analyst -- much less whether they are testimonial.

show why it is wrong to think that the state court's application of clearly established federal law was not unreasonable, to the extent that he also challenges his conviction on this basis, that challenge fails as well.

**Affirmed**.