# United States Court of Appeals
## For the First Circuit

No. 24-1715

RODOLFO CARR,

Petitioner, Appellant,

v.

KENNETH LIZOTTE,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Barron, Chief Judge,
Lipez and Rikelman, Circuit Judges.

Cathryn A. Neaves for petitioner-appellant.

Tara L. Johnston, Assistant Attorney General, Criminal
Bureau, with whom Andrea Joy Campbell, Attorney General of
Massachusetts, was on brief, for respondent-appellee.

March 18, 2026

**LIPEZ**, **Circuit Judge**. Three decades after a fatal shooting in a Boston park, petitioner Rodolfo Carr was convicted of first-degree murder by a Massachusetts jury and sentenced to life imprisonment. In this habeas case, filed pursuant to 28 U.S.C. § 2254, Carr seeks dismissal of the indictment against him, claiming a violation of his Sixth Amendment right to a speedy trial. Carr also asserts an ineffective-assistance-of-counsel claim, arguing that his trial and appellate attorneys failed to develop and present evidence crucial to his speedy-trial claim. After careful consideration of the record and caselaw -- including our binding precedent on when the speedy-trial clock begins to run under federal law -- we agree with the district court that Carr is not entitled to habeas relief.

## I.

The district court did no independent factfinding, and we therefore review its denial of Carr's habeas petition de novo. See, e.g., Hudson v. Kelly, 94 F.4th 195, 200 (1st Cir. 2024). Like the district court, we review with deference the facts underlying the petition as determined by the Massachusetts Supreme Judicial Court ("SJC"). See, e.g., Martinez v. Salisbury, 158 F.4th 101, 103 (1st Cir. 2025).[1] Pursuant to federal statute, the

[1] After an "independent view of the evidence," the SJC adopted as "well founded" the findings of fact made by a Superior Court justice who held a hearing on a pretrial motion filed by Carr seeking dismissal of the indictment on speedy-trial grounds.

- 2 -

state courts' factfinding is presumed correct "unless the petitioner rebuts this 'presumption of correctness' with 'clear and convincing evidence.'" Yeboah-Sefah v. Ficco, 556 F.3d 53, 66 (1st Cir. 2009) (quoting 28 U.S.C. § 2254(e)(1)); see also Watson v. Edmark, 118 F.4th 456, 459 (1st Cir. 2024).[2]

Although Carr asserts that the SJC made an unreasonable determination of the facts, he does not dispute the historical facts found by the SJC. Rather, he argues that the court erred in assessing the legal significance of the facts before it (his speedy-trial claim) and that his attorneys failed to provide the state courts with all relevant facts (his ineffective-assistance claims). Put differently, Carr challenges the significance of the

---

Commonwealth v. Carr, 986 N.E.2d 380, 387 (Mass. 2013) (citation modified); see also infra note 5 (describing Carr's multiple pretrial motions to dismiss based on a speedy-trial violation). We recount the facts as set forth by the SJC, "supplemented with other facts from the record that are consistent with the [state courts'] findings." Hudson, 94 F.4th at 197 n.1 (internal quotation marks omitted) (quoting Lynch v. Ficco, 438 F.3d 35, 39 (1st Cir. 2006)).

[2] In Watson, we noted our prior observation of "some tension" between the "clear and convincing" standard of § 2254(e)(1) and the statement in § 2254(d)(2) that habeas relief may be granted "if the state court decision 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Watson, 118 F.4th at 459 n.2 (quoting Porter v. Coyne-Fague, 35 F.4th 68, 79 (1st Cir. 2022), in turn quoting 28 U.S.C. § 2254(d)(2), (e)(1)). Carr's petition for habeas relief is unavailing for reasons that make any difference in those standards inconsequential. See infra Section II.

facts found -- and omitted -- from the SJC's decision but does not identify error in the factual findings themselves.

**A.   The Crime**

We begin with the facts of the murder, as reported by the SJC:

> Based on the evidence admitted at trial, the jury could have found the following.  On August 5, 1974, the defendant, then twenty years old, and the victim, who was fourteen years old, were involved in a physical altercation near a park on Dudley Street in the Roxbury section of Boston.  The defendant, who lived across the street from the park, waited near a light pole along the third base line of the park's baseball field until the victim returned to the park.  The defendant then retrieved a long rifle with a scope that he had hidden in some nearby bushes.  Carlos Carrasquillo, the victim's cousin, was playing baseball when he saw the defendant aim the gun at his cousin.  Carrasquillo yelled, "[R]un. He is going to shoot you."  The defendant, kneeling on the ground, aimed and shot the victim in the head.
>
> The defendant ran from the park with the rifle in his hand.  A group of bystanders carried the victim to an automobile and drove him to Boston City Hospital.  He died eleven days later . . . .  On the day of the shooting, police recovered a rifle with a scope from bushes in the rear yard of a house near the park.  Witnesses to the shooting, who testified that they were familiar with the defendant, . . . thereafter never saw the defendant in the park.

Commonwealth v. Carr, 986 N.E.2d 380, 387 (Mass. 2013) (alteration in original).  A murder complaint issued against Carr on August

- 4 -

17, 1974 -- roughly two weeks after the shooting and the day after the victim died.  Id.

**B.  The Immediate Aftermath of the Murder**

The SJC described at length the circumstances following the crime that are the focus of Carr's speedy-trial claim.  We again rely on the SJC's recitation of the facts, albeit in summary form.

By September 1974 -- within a month after the shooting -- Carr was in East Chicago, Indiana, where he was arrested and charged for robbery under the alias Michael Sloane.  Id.  He also gave the East Chicago police another alias -- Ivan Santa -- but they learned that he was being sought for a murder in Massachusetts.  Id.  Boston authorities were notified that Carr was being held in Indiana, and they planned to obtain an indictment against him at that time.  Id. at 387-88.  Although they sent the East Chicago police a murder warrant seeking his return to Massachusetts, they later decided to delay indicting Carr until after the East Chicago charge was resolved.  Id. at 388.  However, after a jury acquitted Carr of the robbery charge in March 1975, he was mistakenly released without notice to Boston authorities.  Id.[3]  From that time until 1994, "[t]here is no evidence that the

_____

[3] The SJC noted that

> [i]t is unclear on this record why Indiana
> authorities released the defendant following

- 5 -

Commonwealth [of Massachusetts] knew of the defendant's location or undertook any efforts to locate him." Id.

## C.  Carr's Whereabouts and Activities from 1975 to 1994

The SJC reported that, between 1975 and 1994, Carr "was charged in Illinois and Indiana with four different drug crimes under four different names," id., but the court gave no further details of Carr's activities during those nearly two decades. Then, when evaluating his speedy-trial claim, the SJC noted that "[t]he record before us does not disclose whether the Commonwealth acted with diligence in searching for the defendant, and the defendant, who has the burden of proving prejudicial delay sufficient to warrant dismissal, does not suggest such a lack of diligence." Id. at 390-91.[4]

As we will discuss below, Carr focuses in this appeal on the facts missing from the record presented to the SJC about his

---

his acquittal of the robbery charge.  Boston police provided East Chicago police first with copies of warrants for the defendant's arrest, and then with [a certified] copy of the murder warrant to serve as a detainer.  This should have been sufficient to have prevented the defendant's release without notice to Boston authorities.

Carr, 986 N.E.2d at 390 (footnote omitted).

[4] The government acknowledges that Carr did, in fact, argue lack of diligence during proceedings on the first of the several pretrial motions that he filed in Superior Court seeking to dismiss the indictment against him on speedy-trial grounds.

life between 1975 and 1994. Carr states that, from 1975 to 1984, he worked at an East Chicago company under his own name; from 1977 to 1981, he took classes at Purdue University, also using his own name; and he applied for a social security card under his own name during this period. Although acknowledging that he at times used aliases when detained by authorities during those years, he states that he used his own name at least twice when arrested. In short, as described by Carr, he "liv[ed] for . . . nearly a generation, under his own name, in the exact same place where Boston Police knew he was in 1974-1975." Memorandum of Law in Support of Petition for Writ of Habeas Corpus at 14-15, Carr v. Medeiros, No. 1:15-cv-12958 (D. Mass. July 6, 2021), Dkt. No. 80 ["Habeas Memorandum"].

## D.  Carr's Interactions with Boston Authorities from 1994 through Trial in 2004

The SJC described the Boston Police Department's reengagement with Carr as follows:

> In 1994, Boston police learned that the defendant was again in the custody of the Indiana department of correction. Two Boston police detectives traveled to an Indiana prison and interviewed the defendant concerning the 1974 shooting. The defendant maintained that he was not the man they sought, told police his name was Ivan Santa, and claimed that he had never been to Boston. On February 12, 1996, Boston police informed authorities in the Indiana department of correction that the defendant was still wanted for murder in Massachusetts, and provided them

- 7 -

with the murder warrant to serve as a detainer.

Carr, 986 N.E. 2d at 388. Carr subsequently waived extradition and was brought back to Massachusetts in April 1997. Id. He was indicted for murder in May 1997 and convicted in December 2004. Id. at 386, 388.

During the seven years between Carr's indictment and trial, while represented by a succession of attorneys, Carr filed several motions seeking to dismiss the murder indictment based on the violation of his speedy-trial rights. See id. at 388 n.2. The motions, all unsuccessful, focused on different time periods -- the first on the delay between 1974 and 1997, the second on the delay between 1994 (when he was interviewed by Boston authorities) and his indictment in 1997, and the third on the delay between his indictment and trial. Id.[5] Although Carr challenged the delay in his prosecution through these motions, the SJC found

_____

[5] As reported by the SJC, a Superior Court justice denied the motion to dismiss that was focused on the delay from 1974 to 1997 "on the ground that 'the reason for the delay is attributable to [the] defendant's being a fugitive from justice.'" Carr, 986 N.E.2d at 387 (alteration in original) (quoting the Superior Court decision). The motion that focused on the post-indictment delay was denied "based on the [trial] judge's determination that the Commonwealth was unilaterally responsible for only 156 days of delay during the seven-year period." Id. at 391. The SJC did not recount the rationale for Carr's unsuccessful motion based solely on the delay between 1994 and 1997, and, in its speedy-trial analysis, the SJC included those three years with the period that began in 1975. See id. at 389-90; see also infra Section I.E.1.

- 8 -

that he did not assert his right to a speedy trial until he filed a motion for a speedy trial in May 2004, "some seven years after his indictment, and ten years after Boston police interviewed him in Indiana in connection with the shooting."  Id. at 391-92.

As stated above, a jury found Carr guilty of first-degree murder, and he was sentenced to life in prison.

## E.  Post-Conviction Proceedings

### 1.  Direct Appeal and First New Trial Motion

Carr unsuccessfully appealed his conviction to the SJC, pressing claims for the violation of his constitutional right to a speedy trial and ineffective assistance of counsel, among other challenges to his prosecution and trial.  See id. at 386.[6]  In its decision, the SJC applied the longstanding four-part balancing test for evaluating a Sixth Amendment speedy-trial claim that was set forth by the Supreme Court in Barker v. Wingo, 407 U.S. 514, 530-33 (1972).  See Carr, 986 N.E.2d at 389-93.  Under that framework, as the SJC explained, courts must consider "(1) the

---

[6] Under Massachusetts law the SJC is required to "review[] the entire record," Carr, 986 N.E.2d at 404, when considering a direct appeal in a capital case (a category that includes cases involving a charge of first-degree murder) and may order a new trial, inter alia, "for any . . . reason that justice may require," Mass. Gen. Laws ch. 278, § 33E.  The SJC thus looks beyond the specific arguments raised by the defendant in such cases.  After performing that full-record review in Carr's case, the SJC "conclude[d] that there [was] no basis to exercise our authority pursuant to [section 33E] to reduce the verdict of murder in the first degree or to order a new trial."  Carr, 986 N.E.2d at 404.

length of the delay [before trial]; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant." Id. at 389 (citing Barker, 407 U.S. at 530). The SJC readily concluded that the first factor -- the length of the delay -- "weigh[ed] heavily" in Carr's favor because, under Massachusetts law, the relevant timeframe was the thirty years between issuance of the murder complaint in 1974 and trial in 2004. Id. The SJC described that delay as "extraordinary." Id.

To assess the second factor -- the reason for the delay -- the SJC divided the thirty-year timespan into three segments: (1) the brief period from 1974 to 1975, when Boston authorities knew Carr was incarcerated in Indiana on the robbery charge; (2) "the twenty-two-year period from 1975 until the defendant's return to Massachusetts in 1997; and [(3)] the seven-year period between his indictment in 1997 and his trial in 2004." Id. at 389-90. However, neither in his appeal to the SJC nor in his habeas petition did Carr argue that the delay from 1997 to 2004 should be weighed in his favor. See id. at 391; Habeas Memorandum, at 3. Likewise, Carr has not argued to us that the 1974-75 period is material to his speedy-trial claim. Rather, he maintains that "the critical time frame" is the nineteen years "from 1975, when [he] was acquitted in East Chicago, Indiana, [to] 1994, when Boston Police went out to Indiana to interview [him]."

- 10 -

We thus consider only that nineteen-year delay as pertinent to this appeal. For those years,[7] the SJC ultimately concluded that, despite the lack of evidence showing efforts by Boston authorities to find Carr, the delay "d[id] not weigh against the Commonwealth" because Carr's "use of aliases with authorities in the Midwest, and his assertion of a false identity to Boston police [in 1994], permit the inference that he was attempting to evade prosecution for the shooting during this period." Carr, 986 N.E.2d at 391.

The SJC weighed the third factor -- assertion of the speedy-trial right -- "heavily" against Carr because he did not seek a speedy trial until 2004, "some seven years after his indictment" and a decade after Boston authorities questioned him about the murder in Indiana. Id. at 391-32. On the final factor -- prejudice to the defendant -- the SJC presumed that Carr suffered prejudice, id. at 392, but concluded, "after having weighed the Barker factors, that the defendant's constitutional right to a speedy trial was not violated," id. at 393. The SJC similarly rejected Carr's ineffective-assistance-of-counsel claim.[8]

---

[7] As noted above, the SJC considered the three years from 1994 to 1997 together with the preceding nineteen years -- resulting in a twenty-two-year period. That three-year difference is immaterial to our analysis.

[8] The deficient performance that Carr claimed in his direct appeal to the SJC involved omissions by his trial counsel that are not part of his habeas case, which focuses on his attorneys'

- 11 -

In January 2014, after the SJC affirmed his conviction, Carr filed a pro se motion for a new trial in Superior Court. The motion was denied, and Carr petitioned unsuccessfully to obtain review of that denial by the full SJC. He then turned to the federal courts.

## 2. The Habeas Petition

In July 2015, Carr filed the habeas petition that underlies this appeal. Among other contentions, he asserted that the SJC had wrongly rejected his Sixth Amendment speedy-trial and ineffective-assistance-of-counsel claims, including, with respect to the latter, that his appellate attorney had failed to raise a "speedy trial claim." See Petition for Habeas Corpus at 2-3, Carr, No. 1:15-cv-12958 (D. Mass. July 15, 2015), Dkt. No. 1. Later, at Carr's request, the district court granted a stay of the petition so Carr could exhaust the specific ineffective-assistance claims that are now before us: (1) his trial counsel's failure to develop and present the evidence described above showing that he was living openly under his own name for most of the time between 1975 and 1994, and (2) his appellate counsel's failure to raise trial counsel's ineffectiveness in that respect -- deficiencies that

_____

responsibility for the limited record concerning his life in Indiana between 1975 and 1994. Given the irrelevance of the earlier contentions to our review, we see no need to describe the SJC's reasons for rejecting them. See 986 N.E.2d at 402-04.

- 12 -

Carr claimed significantly damaged his ability to show a speedy-trial violation.  After the state courts rejected Carr's motion for a new trial raising those claims, he returned to federal court and moved to amend his habeas petition to include the newly exhausted claims.  The district court held a hearing on the motion and granted it, but the court also issued a decision that same day denying habeas relief.[9]

On the speedy-trial claim, the district court held that the SJC's assessment of the record -- "'indicat[ing] that Carr did not want a speedy trial'" -- was "supported by a reasonable application of Sixth Amendment jurisprudence."  Carr v. Lizotte, No. 15-12958, 2024 WL 3677929, at *2 (D. Mass. July 16, 2024) (citation modified) (quoting Carr, 986 N.E.2d at 393).  On the ineffective-assistance claims, the district court similarly concluded that "[t]he Commonwealth's courts . . . properly applied the relevant legal standard in rejecting Carr's . . . arguments." Id.  The court thus denied Carr's habeas petition.

We subsequently granted a certificate of appealability

---

[9] Carr's original habeas petition was filed pro se, but he was later represented by appointed counsel.  See Carr v. Lizotte, No. 15-12958, 2024 WL 3677929, at *1 & n.2 (D. Mass. July 16, 2024).  His attorney pursued the ineffective-assistance claims and, of the issues Carr had raised pro se, only his speedy-trial claim.  See id.  In its decision, the district court rejected "outright" the remaining claims -- i.e., those not pursued by counsel -- for lack of merit.  Id. at *1 n.2.

limited to the speedy-trial claim and the related claims of ineffective assistance by Carr's trial and appellate attorneys.[10]

## II.

The speedy-trial and ineffective-assistance claims that Carr brings to us confront significant threshold barriers. For the speedy-trial claim, the SJC analyzed the delay using the Supreme Court's four-part Barker v. Wingo inquiry, see Carr, 986 N.E.2d at 389, but it relied on Massachusetts law in determining that the clock began to run when the murder complaint was issued in 1974, see id.[11] The federal clock, however, differs from the state clock. Our precedent "hold[s] that a Massachusetts criminal complaint, standing alone, is not the public, official accusation that the Sixth Amendment requires." Butler v. Mitchell, 815 F.3d 87, 90 (1st Cir. 2016); see also Rashad v. Walsh, 300 F.3d 27, 35-36 (1st Cir. 2002) (holding that "the preferment of charges" in a

---

[10] Both the speedy trial and ineffective-assistance claims arise under the Sixth Amendment, which provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . and to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has long recognized that the Sixth Amendment "right to counsel is the right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).

[11] Under the Massachusetts constitution, the speedy-trial clock "begins to run upon the issuance of a criminal complaint." Commonwealth v. Dirico, 111 N.E.3d 1062, 1075 (Mass. 2018) (citing Mass. Const. pt. 1, art. XI).

- 14 -

Massachusetts complaint did not start the speedy-trial clock). Rather, under federal law, "the speedy-trial right attache[s], and the count beg[ins], not when the complaint was issued, but when the . . . indictment was announced." Butler, 815 F.3d at 89.[12] If Rashad and Butler apply here, the only relevant period of delay for Carr's Sixth Amendment speedy-trial claim would be the seven years from Carr's indictment in 1997 to his trial in 2004.[13]

Meanwhile, the threshold hurdle for Carr's ineffective-assistance claims arises from the complex procedural default rules that limit the availability of habeas relief in federal court. See, e.g., Lee v. Corsini, 777 F.3d 46, 54-58 (1st

---

[12] In Dirico, which was decided after Butler, the SJC noted the differing federal and state starting times for the speedy-trial clock. See 111 N.E.3d at 1075-76 (citing Butler, 815 F.3d at 89). The SJC's decision in Carr's appeal -- issued in 2013 -- preceded Butler by three years but came after our 2002 decision in Rashad. Nonetheless, the SJC in Carr did not distinguish between the state and federal speedy-trial clocks in its analysis. See 986 N.E.2d at 388-89.

[13] In Rashad, we reserved judgment on what event would trigger the speedy-trial clock "when there is no requirement that the government obtain an indictment, or when the defendant has waived the right to proceed by indictment." 300 F.3d at 36 n.4. That issue does not arise here because Massachusetts law requires an indictment for first-degree murder charges, see Mass. Gen. Laws ch. 263, § 4A, and "a defendant charged with a capital crime does not have the right to waive indictment," Commonwealth v. Perkins, 981 N.E.2d 630, 636 n.13 (Mass. 2013); see also Mass. Gen. Laws ch. 263, § 4A; Mass. R. Crim. P. 3(c)(1). Under Massachusetts law, "murder in the first degree" is a capital crime. Perkins, 981 N.E.2d at 635 n.9; see also Mass. Gen. Laws ch. 278, § 33E. The indictment against Carr was labeled "Murder, 1st Degree." Supplemental Answer at 211, Carr, No. 1:15-cv-12958 (D. Mass. Apr. 1, 2016), Dkt. No. 26.

- 15 -

Cir. 2015). According to the government, those rules bar us from considering the deficiencies in representation on which Carr now relies to claim constitutionally ineffective performance by his attorneys with respect to his speedy-trial claim. The government maintains that Carr raised those concerns in state court too late and cannot make the required showing of cause and prejudice to overcome that default. See id. (explaining the relevant procedures under Massachusetts law and the impact of procedural default on federal habeas review).

As we shall explain, Carr cannot surmount the threshold barrier to his speedy-trial claim and, because his ineffective-assistance-of-counsel claims fail on their merits, we need not delve into the issue of procedural default.

## A. The Speedy-Trial Clock

Carr acknowledges that our precedent on the running of the speedy-trial clock under federal law, which governs his Sixth Amendment claim, presents a problem for him. He asks us to reconsider Rashad and Butler, but that is a step we may not take as a panel. See, e.g., United States v. Perez, 89 F.4th 247, 250 (1st Cir. 2023) ("Under the law of the circuit doctrine, newly constituted panels must follow the rulings of preceding panels that are 'directly (or even closely) on point . . . .'" (quoting United States v. Guzman, 419 F.3d 27, 31 (1st Cir. 2005))). Evidently anticipating that we would adhere to our court's prior

rulings, Carr alternatively argues that we should not treat the indictment as the trigger for the speedy-trial clock given the facts of this case.  He argues that a "Wanted Poster" naming him as a suspect, which was circulated shortly after the 1974 shooting, should be viewed in combination with the complaint to establish "the public, official accusation that the Sixth Amendment requires."  Butler, 815 F.3d at 90.

In Rashad, where we first addressed whether a Massachusetts complaint or a later-filed indictment "wound the constitutional clock," 300 F.3d at 35, we concluded that Supreme Court precedent left "no doubt that only a 'public accusation' animates the right to a speedy trial," id. at 36 (quoting United States v. Marion, 404 U.S. 307, 321 (1971)).  Importantly, we then stated that, "[c]onsistent with this approach, the case law suggests that, in the absence of either an indictment or an information, 'only the actual restraints imposed by arrest and holding to answer a criminal charge' engage the speedy trial right."  Id. (emphasis added) (quoting United States v. Loud Hawk, 474 U.S. 302, 310 (1986)).

Based on this assessment of the law, we concluded that the date of the rape complaint against petitioner Rashad was "irrelevant for speedy trial purposes" "[b]ecause the preferment of charges [in the complaint] was unaccompanied by any public accusation or act of detention."  Id. (emphasis added); see also

- 17 -

id. at 31 (identifying the charged crime). Then, in Butler, we described the needed step as one that "commence[s] the prosecutorial process in earnest," and we adhered to our prior conclusion that "a Massachusetts criminal complaint, standing alone," does not suffice. Butler, 815 F.3d at 90.

Carr argues that, with inclusion of the police circular naming him -- the "Wanted Poster" -- the record here contains more than the complaint "standing alone," and the additional element -- the "Wanted Poster" -- provides the "public accusation" that we found lacking in Rashad and Butler. We disagree.

We do not doubt that a "Wanted Poster" may result in more public awareness that an individual is the target of a criminal investigation than would a complaint on its own. In Rashad, however, we exemplified the "'public accusation' [that] animates the right to a speedy trial" with reference to an indictment or information -- the two formal charging methods that we said would trigger the speedy-trial clock for a non-detained individual. 300 F.3d at 36 (quoting Marion, 404 U.S. at 321). The notion of a formal charging document appears repeatedly in the Supreme Court's speedy-trial cases. See, e.g., Betterman v. Montana, 578 U.S. 437, 441 (2016) (noting that "[t]he Sixth Amendment's Speedy Trial Clause homes in on the . . . period[] from arrest or indictment through conviction," and that the constitutional right to a speedy trial "does not attach

- 18 -

until . . . a defendant is arrested or <u>formally</u> accused" (emphasis added)); <u>Doggett</u> v. <u>United States</u>, 505 U.S. 647, 654-55 (1992) (noting "the principle . . . that the Sixth Amendment right of the accused to a speedy trial has no application beyond the confines of a <u>formal</u> criminal prosecution" and is "triggered by arrest, indictment, or other <u>official</u> accusation" (emphases added)).

The police circular naming Carr is plainly not an official, formal accusation. And a "Wanted Poster" neither transforms the complaint into a more formal charging document nor moves "the prosecutorial process" to a stage beyond that achieved by the complaint itself. <u>Butler</u>, 815 F.3d at 90. Put differently, any public awareness of criminal charges generated by a "Wanted Poster" does not stem from the sort of formal "public accusation" that <u>Rashad</u> and <u>Butler</u> set as a requirement for starting the speedy-trial clock -- and that we found unfulfilled by the complaint alone.

In sum, we see no rationale for concluding that the police circular changed the status of the prosecution against Carr such that the circumstances here fall outside the scope of <u>Rashad</u> and <u>Butler</u>. For the purpose of Carr's habeas petition, therefore, the speedy-trial clock started in 1997, when he was detained and indicted for the murder charge.[14] However, as we have recounted,

---

[14] We note the Supreme Court's observation that, "before arrest or indictment, when the suspect remains at liberty[,]

Carr made no argument to the SJC -- let alone to us -- that the seven-year delay from indictment to trial violated his constitutional right to a speedy trial.  See supra Section I.E.1.[15] Accordingly, any such claim is unequivocally waived.

## B.  Ineffective Assistance of Counsel

As we have described, Carr blames his trial attorney for failing to bolster the pretrial motion to dismiss that covered the relevant nineteen-year delay with evidence that he was living under his own name for most of the period between his departure from Massachusetts in 1974 and his interview with the Boston authorities twenty years later.  And he complains that his appellate counsel provided constitutionally deficient advocacy when the attorney failed to invoke trial counsel's deficient performance on that speedy-trial claim in the appeal to the SJC.

_____

statutes of limitations provide the primary protection against delay, with the Due Process Clause as a safeguard against fundamentally unfair prosecutorial conduct."  Betterman, 578 U.S. at 441.  Although Carr's brief to us repeatedly invokes his right to due process in addition to his Sixth Amendment right to a speedy trial, he makes no independent argument premised on the Due Process Clause.  The focus on the Sixth Amendment is consistent with the certificate of appealability, which we granted "on the question of a speedy trial, and on the related question of the effectiveness of the assistance of counsel."

[15] The SJC cited various factors not attributable to the government that caused delay between 1997 and 2004, including that Carr changed attorneys "several times," "filed numerous pretrial motions, and agreed to dozens of continuances."  Carr, 986 N.E.2d at 391.

The government argues that we should not reach the merits of the ineffective-assistance claims because they were procedurally defaulted and thus foreclosed from habeas review. See generally Lee, 777 F.3d at 54-58. However, as the district court observed, the issue of procedural default is not straightforward on the record before us. See Carr, 2024 WL 3677929, at *2. Accordingly, like the district court, see id., we choose to bypass the complexities of the threshold issues because Carr's ineffective-assistance claims are unavailing on the merits. See, e.g., Yeboah-Sefah, 556 F.3d at 68 n.6 (similarly finding no need to resolve a procedural default dispute in a habeas case).[16]

With respect to Carr's Sixth Amendment speedy-trial

---

[16] The Massachusetts courts rejected the ineffective-assistance claims that are before us in brief orders and did not expressly perform a Strickland analysis. If the state courts rejected those claims on the merits -- an issue we have bypassed -- we could not grant habeas relief unless we determined that relief was denied based on an "unreasonable application of clearly established Federal law." Yeboah-Sefah, 556 F.3d at 70 (quoting 28 U.S.C. § 2254(d)(1)); see also Harrington v. Richter, 562 U.S. 86, 105 (2011) ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (citation modified) (first quoting Strickland, 466 U.S. at 689; and then quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009))); Martinez, 158 F.4th at 107. If the state courts did not adjudicate the ineffective-assistance claims on the merits, de novo review applies. See, e.g., Martinez, 158 F.4th at 112; Wright v. Marshall, 656 F.3d 102, 107-108 (1st Cir. 2011). Given our decision to sidestep the threshold procedural-default issue, we afford Carr the benefit of our independent assessment of the ineffective-assistance claims. However, as we are about to explain, the Strickland standard for relief is demanding even when applied de novo.

claim, Carr's contentions offer no possibility of obtaining habeas relief on the ground that he was denied effective legal assistance. The deficiencies Carr cites are relevant only to a period of delay that we have excluded from his federal speedy-trial claim. Thus, even if we were to find "a reasonable probability that, but for counsel's unprofessional errors," the SJC might have weighed the delay between 1975 and 1994 more favorably for Carr, Strickland v. Washington, 466 U.S. 668, 694 (1984); see also id. at 687 (setting forth the two-pronged inquiry for ineffective-assistance-of-counsel claims), that changed assessment would have no impact on the federal speedy-trial claim before us. As we have explained, under the Sixth Amendment, those years play no role in determining whether Carr was denied a speedy trial.

However, Carr's contentions of ineffective assistance are relevant to his assertion that the SJC improperly rejected his speedy-trial claim under Massachusetts law. As recounted above, under the Massachusetts constitution, the speedy-trial clock was triggered by issuance of the complaint in 1974, and the state-law speedy-trial claim therefore encompasses the period from 1975 to 1994. If "unprofessional errors" by his trial or appellate counsel resulted in Carr's loss of relief to which he was entitled under Massachusetts law, id. at 694, he would have a viable claim that his Sixth Amendment right to effective legal representation was violated. See, e.g., Miranda v. Kennedy, 125 F.4th 23, 31-32 (1st

- 22 -

Cir. 2025) (in a federal habeas case, analyzing a Sixth Amendment claim premised on assertions of deficient performance affecting petitioner's culpability under state law); Ayala v. Alves, 85 F.4th 36, 53 (1st Cir. 2023) (analyzing ineffective-assistance claim based on trial counsel's handling of evidentiary issues in state trial).

Under Strickland's two-pronged test for evaluating claims of ineffective assistance of counsel, a petitioner must show both deficient performance by his attorneys and resulting prejudice to obtain relief. See Strickland, 466 U.S. at 700; see also Torres-Estrada v. United States, 122 F.4th 483, 494 (1st Cir. 2024). We have observed multiple times that "[t]he petitioner bears a heavy burden on each prong." Torres-Estrada, 122 F.4th at 494 (quoting Casey v. United States, 100 F.4th 34, 42 (1st Cir. 2024)).

Carr is unable to satisfy either prong of the Strickland inquiry with respect to his state-law speedy-trial claim. The "high bar" set by Strickland's performance prong reflects the Supreme Court's recognition that "[a] defense lawyer navigating a criminal proceeding faces any number of choices about how best to make a client's case." Buck v. Davis, 580 U.S. 100, 118 (2017). To demonstrate deficient performance, therefore, the defendant must show that "the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed . . . by the Sixth

Amendment.'"   Id. at 118-19 (omission in original) (quoting Strickland, 466 U.S. at 687).

In affidavits submitted as part of Carr's 2017 motion for a new trial in Massachusetts Superior Court, Carr's trial and appellate attorneys explained that they did not dwell on the evidence of his living openly during most of the period from 1975 to 1994 because they believed they had enough other evidence of the government's lack of diligence to support the speedy-trial claim.[17]   Carr may be correct that the "decision[] to leave

_____

[17] The attorney who represented Carr at a hearing on his pretrial motion to dismiss on speedy-trial grounds, as well as at trial, reported that, among other points, he "argued that there was no evidence that the Commonwealth was diligent in prosecuting th[e] case" and that Carr was prejudiced "due to the passage of time, given the significant loss of evidence in the case, including physical evidence and witnesses."   He explained that he "did not develop, for purposes of the Motion to Dismiss, evidence that showed that Mr. Carr was working and going to school under his own name in Indiana because [he] thought [he] had enough evidence already."   In his view, the nineteen years between 1975 and 1994 were less important than "the times on either side of that time frame, where [he] could show the Commonwealth's lack of diligence," specifically, "its failure to seek an indictment in 1974, and its failure to notify Mr. Carr for two years after it obtained the 1994 warrant."

Carr's appellate attorney also saw no need for additional speedy-trial evidence: "[He] believed that the length of time, along with no evidence showing that the Boston Police Department [was] taking action in trying to locate Mr. Carr during that lengthy period, showed sufficient government negligence that the Superior Court erred in denying the motion to dismiss on Speedy Trial grounds."   That attorney also noted that the trial record contained some evidence of Carr's open living, specifically transcripts showing that "Mr. Carr had taken classes under his own name at Purdue University."

unexplained the full picture of Mr. Carr's life . . . from 1975 to 1994[] resulted in Mr. Carr's use of aliases when arrested being used as 'low-hanging fruit' by the Commonwealth to justify" the delay in prosecuting him. Habeas Memorandum, at 20. Yet, "the proper standard for attorney performance is that of reasonably effective assistance." Strickland, 466 U.S. at 687. We cannot characterize the judgments made by Carr's attorneys as "so patently unreasonable that no competent attorney would have made [them]." Torres-Estrada, 122 F.4th at 494 (quoting Watson v. United States, 37 F.4th 22, 28 (1st Cir. 2022)).

As described above, the attorneys' affidavits show that they were aware that Carr used his own name for his schooling and in other contexts -- and, indeed, the record before the SJC contained some of that evidence[18] -- but each attorney determined that it would be sufficient to emphasize the other favorable evidence pertinent to the Strickland inquiry  See supra note 17. Even if one could characterize as a misjudgment the choice to rely on the Commonwealth's lack of diligence and the prejudice to Carr, without highlighting his open living between 1975 and 1994, those

---

[18] Although not referenced in the affidavit from Carr's appellate counsel described above, in addition to the evidence in the trial record about Carr's using his own name at Purdue University, trial counsel introduced evidence that Carr applied for a social security card in his own name in 1984 and that he had used his real identity to register a car in Indiana. See Supplemental Answer, attachment vol. III at 356-57, Carr, No. 1:15-cv-12958 (D. Mass. Apr. 1, 2016), Dkt. No. 26-5.

determinations were far from "patently unreasonable" in the context of the entire record. Torres-Estrada, 122 F.4th at 494 (quoting Watson, 37 F.4th at 28). Carr's repeated use of aliases when interacting with law enforcement -- and particularly his insistence that he was not Rodolfo Carr when confronted by Massachusetts authorities in 1994 -- necessarily diminished the impact of his using his own identity at other times. Given the mixed record on Carr's behavior, any miscalculation in choosing which facts to highlight was simply not an "error[] so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687; see also Casey, 100 F.4th at 42 ("To give the required deference to counsel's choices, we strongly presume that the attorney has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (citation modified) (quoting Strickland, 466 U.S. at 690)).

The record also undermines Carr's effort to satisfy the prejudice prong of the Strickland inquiry. Carr must demonstrate a reasonable probability that, if the SJC had before it -- in Carr's words -- "the full picture of [his] life" during the relevant nineteen years, the court would have found a speedy-trial violation under Massachusetts law. See Strickland, 466 U.S. at 694. As we have noted, however, the trial record already included

evidence that Carr had used his own name in a variety of contexts,[19] and the SJC remarked on the absence of evidence that Boston authorities had attempted to track him down during the years in question.  See Carr, 986 N.E.2d at 390-91.  In effect, the court discounted the significance of these favorable facts in light of Carr's use of aliases in his interactions with law enforcement authorities -- including in the 1994 interview in which he "denied both that his name was Rodolfo Carr and that he had ever been to Boston."  Id. at 390.[20]

In addition, we cannot conclude that more evidence concerning Carr's day-to-day life between 1975 and 1994 would have changed the court's view of Carr's failure to invoke his speedy-trial right under state law until shortly before trial -- which the court weighed "heavily" against him -- or the importance the court gave to the prejudice factor in the Barker framework.  Carr, 986 N.E.2d at 392-93.  Although the court

---

[19] Given its full record review, see supra note 6, the SJC would have been aware of this evidence even if it was not highlighted by counsel.

[20] We recognize that the SJC erroneously stated that Carr had not suggested a lack of diligence on the part of the Boston police. See Carr, 986 N.E.2d at 390-91.  The SJC, however, went on to say that, "[i]n any event," Carr's "use of aliases with authorities in the Midwest, and his assertion of a false identity to Boston police, permit the inference that he was attempting to evade prosecution for the shooting" from 1975 to 1997.  Id. at 391.  This passage indicates that the SJC weighed Carr's attempts to conceal his identity more heavily than any lack of diligence by the authorities.

presumed prejudice under the Barker framework from the lengthy delay, it noted within its speedy-trial analysis that it rejected Carr's separate argument that he was entitled to dismissal of the indictment based on the loss of evidence because "the prejudicial effect of such lost evidence was speculative at best." Carr, 986 N.E.2d at 392 n.4. The court also observed that "prejudice . . . 'cannot alone carry a Sixth Amendment claim,' and is only 'part of the mix of the relevant facts.'" Id. at 392 (quoting Doggett, 505 U.S. at 656). We thus see no "reasonable probability" that more attention by his trial and appellate attorneys to Carr's use of his own name would have resulted in a different outcome for the SJC's assessment of the Barker factors for the purposes of the state-law speedy-trial right. Strickland, 466 U.S. at 694.

In sum, even giving Carr the benefit of de novo review for his ineffective-assistance claims -- the most favorable review available -- those claims are unavailing. Accordingly, finding no basis for disturbing his conviction, we affirm the denial of Carr's petition for habeas relief.

So ordered.